UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SAGE ANDREW CASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.  2:14-CV-316-JRG-MCLC |
| | ) |
| AUTUMN ARMSTRONG, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This civil matter is before the Court on a motion for summary judgment by defendant Butch Gallion ("Lt. Gallion") [Doc. 27]. Plaintiff has not filed a response in opposition to the request and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2. For the reasons that follow, the Court will grant Lt. Gallion's motion for summary judgment.

**I. BACKGROUND**

**A. Procedural**

Plaintiff filed this instant action under 42 U.S.C. § 1983 against Autumn Armstrong, Donna Carter, Lt. Gallion, and Brittany Saunders on October 21, 2014 [Doc. 1]. In the complaint, Plaintiff claimed that Lt. Gallion was deliberately indifferent to his serious medical need[1] [Doc. 1 at 5]. Specifically, Plaintiff alleges that he has not been properly treated for vision

---

[1] Plaintiff initially asserted this claim of deliberate indifference in the case of *Cash v. Gallion, et al.*, No. 2:14-CV-240-JRG-CLC. During the screening process required by the Prison Litigation Reform Act, this Court dismissed the claim as insufficiently pled. Plaintiff then filed an amended complaint which this Court denied due to the instant action containing the same assertions. Even though *Cash v. Gallion, et al.*, No. 2:14-CV-240-JRG-CLC, has been dismissed, Lt. Gallion references certain representations made by Plaintiff in that earlier lawsuit. Pursuant to Federal Rules of Evidence 201(b) and (c), the Court takes judicial notice of the record in the previous lawsuit referred to in Lt. Gallion's motion for summary judgment.

problems [Doc. 1 at 5]. Plaintiff states that he was told by Lt. Gallion on July 14, 2014, that he would not be taken for an eye examination unless the jail physician deemed it an emergency [*Id.*]. Plaintiff claims that it took him over six months to see the jail physician, Dr. Matthews, and when he did, Dr. Matthews told Plaintiff he "would be provided an emergency medical eye exam as soon as Nurse Brittany Saunders approved it through the sheriff" [*Id.*]. However, Plaintiff asserts that on October 8, 2014, Lt. Gallion told him that Plaintiff would not receive an eye exam unless he provided the funds [*Id.*].

Defendants Autumn Armstrong, Donna Carter, and Butch Gallion were properly served and filed a timely joint answer on February 27, 2015 [Doc. 11]. On May 12, 2016, defendants Autumn Armstrong and Donna Carter filed a joint motion for summary judgment which this Court granted, and they were dismissed from this action [Doc. 31]. On May 12, 2016, Lt. Gallion filed this instant motion for summary judgment claiming that he is entitled to qualified immunity on the claim of deliberate indifference to a serious medical need [Doc. 27]. In support of his request, Lt. Gallion filed a memorandum and statement of material facts [Docs. 28, 29]. Notably, Plaintiff has not responded in opposition to summary judgment or submitted any evidence in support of his claims.

B.  Factual[2]

Plaintiff, who has been housed at the Hawkins County Jail since November 17, 2013, began requesting medical attention for vision problems in June of 2014 [Doc. 27-1 p. 6]. After submitting several requests over a period of months [*id.*], Plaintiff filed the instant action against Lt. Gallion on October 21, 2014 [Doc. 1].

---

[2] Plaintiff has not submitted any affidavits or other evidence in support of the claimed series of events contained in his complaint. As such, the following factual summary is derived from the evidentiary record created by affidavits and exhibits submitted contemporaneously with Defendant's motion for summary judgment [Docs. 27-1, 27-2, 27-3].

2

The Hawkins County Jail has a kiosk system where an inmate can communicate online with correctional staff and medical staff [Doc. 27-1 at ¶ 27]. Although several requests and grievances related to his vision were submitted, Lt. Gallion responded to two (2) requests and two (2) grievances regarding this matter; the other requests and grievances were handled by other jail house employees [*Id*. at ¶ 28].

On July 14, 2014, Plaintiff filed a grievance through the jail kiosk system complaining that he had not been given an eye exam as he had previously requested [*Id*. at 27]. Lt. Gallion responded by saying:

> Mr. Cash, have you been seen by the doctor? If the doctor deems that it is an emergency or medically necessary, he will advise and have an appointment made for you to see an eye doctor. If he does not feel that it is medically necessary, then you will not be sent.

[*Id*.].

On August 4, 2014, Plaintiff filed a request through the jail's online kiosk system stating that he was having "serious eye problems" and was told "this facility doesn't fund eye care" [*Id*. at 19]. Plaintiff requested to be transferred to a facility that funds eye care [*Id*.]. Lt. Gallion responded to Plaintiff by saying:

> Mr. Cash, have you been examined by the doctor? If the doctor determines that your need is an emergency or medically necessary he will order it. If it is a vision problem that does not constitute an emergency, he will not order it.

[*Id*.]. On August 12, 2014, Plaintiff filed a request through the jail's online kiosk system complaining that he had "been trying to see the doctor so [he] can get some glasses" and requested to be transferred to a facility that funds eye care [*Id*. at 20]. Lt. Gallion responded to Plaintiff by saying:

> Mr. Cash, if there is a medical necessity or an emergency situation concerning your eyes it will be treated. As far as you getting shipped out, you know the deal. The state calls us when they have available beds. Then we look at sentence and

special needs to decide who goes. In almost two years I can only recall three
times the state has called, it doesn't happen very often.

[*Id.*].

On October 9, 2014, Plaintiff filed a grievance through the jail's online kiosk system complaining that he has not been given an eye exam [*Id.* at 30]. Lt. Gallion responded by saying:

> Mr. Cash, I have always advised you that if the Doctor said you needed to see an eye doctor that we would send you to an eye doctor. But as far as purchasing you a pair of eye glasses, I advised you that we were not going to purchase eye glasses.

[*Id.*].

Hawkins County contracted with Southern Health Partners ("SHP") to provide medical care to inmates at the Hawkins County Jail [Doc. 27-1 at ¶ 26]. At the time of Plaintiff's alleged denial of medical treatment, Lt. Gallion was the jail administrator of the Hawkins County Jail [Doc. 29 at ¶ 3]. Lt. Gallion had no involvement with whether Plaintiff, or any other inmate, is seen by SHP's medical staff [*Id.* at ¶ 5].

According to Plaintiff's medical records, he saw Dr. Mathews on September 22, 2014 [Doc. 27-2 at ¶ 4]. During that visit, Plaintiff reported that he "can't see TV or read a book" [Doc. 27-2 ¶ at 4; Doc. 29 at ¶ 7]. He also reported constant headaches [Doc. 27-2 at ¶ 4; Doc. 29 at ¶ 7]. He told Dr. Mathews that he has glasses at home or in his car, but that his family cannot find them [Doc. 27-2 at ¶ 4; Doc. 29 at ¶ 7]. Dr. Mathews noted on the Progress Notes: "Needs Glasses." [Doc. 27-2 at ¶ 4; Doc. 29 at ¶ 7]. According to Dr. Mathews, this notation of "Needs Glasses" was based on Plaintiff's subjective complaints [Doc. 27-2 at ¶¶ 4-6; Doc. 29 at ¶ 8]. Dr. Mathews did not make any objective findings [Doc. 27-2 at ¶¶ 4-6; Doc. 29 at ¶ 8]. Dr. Mathews denies Plaintiff's allegation that Plaintiff was ordered an "emergency eye exam" by Dr.

4

Mathews [Doc. 27-2 at ¶¶ 4-6; Doc. 29 at ¶ 8].  Dr. Mathews declared that he did not order Plaintiff be referred to an eye specialist-- on an emergency basis or otherwise [Doc. 27-2 at ¶¶ 4-6; Doc. 29 at ¶ 8].

In addition, Plaintiff's medical records contain a notation from a nurse which states that Plaintiff was offered reading glasses but turned down the offer "because they do not help" [Doc. 27-2 at ¶ 7; Doc. 29 at ¶ 9].  However, just five days before his visit with Dr. Mathews, Plaintiff represented to the Court in his previous lawsuit, by means of letter, that his "eye sight has gotten so bad, [he's] having [his] cell-mate write this letter for [him]" [Doc. 29 at ¶ 10; Doc. 8 p 39 in *Cash v. Gallion, et al.*, No. 2:14-CV-240-JRG-CLC].  It was later admitted in his answered requests for admission in *Cash*, No. 2:14-CV-240-JRG-CLC, that Plaintiff did, in fact, write the letter himself to the Court [Doc. 27-3; Doc. 29 ¶ 11].  Plaintiff's explanation for the discrepancy is that a cell mate wrote the first draft of the letter, but the handwriting was so sloppy that Plaintiff borrowed glasses from another inmate and rewrote the letter himself [Doc. 27-3 p. 5].

## II.  STANDARD

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The motion can be limited to a single claim or part of each claim and the moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

5

All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact proper for the factfinder. *Id.* at 250. The Court does not weigh the evidence, determine the truth of the matter, *id.* at 249, or search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). "The inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby, Inc.*, 477 U.S. at 250.

### III. Analysis

Lt. Gallion argues that he is entitled to qualified immunity on the claims presented against him in this matter. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or

6

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 731, 735 (2011) (citation omitted); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *abrogated in part, Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity is an affirmative defense[3], and once raised, the plaintiff must show that the official violated a right so clearly established that a "reasonable official would have understood that what he [was] doing violate[d] that right." *Al-Kidd*, 563 U.S. at 741 (internal citation and quotations omitted). The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted) and if the plaintiff fails to carry his burden as to either element of the qualified immunity analysis, then the official is immune from suit, *Cockrell v. City of Cincinnati*, 468 F.App'x 491, 494 (6th Cir. 2012).

## A. Deliberate Indifference Standard

As part of its prohibition of "cruel and unusual punishment," the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In short, officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eighth Amendment prohibition against mistreatment only arises, however, if it is tantamount to "punishment," and courts have consequently imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Therefore, a prison official's "deliberate indifference" to a "substantial risk of serious harm" to an inmate violates the Eighth Amendment. *Farmer*, 511 U.S. at 828.

---

[3] Lt. Gallion pleaded qualified immunity in his answer [Doc. 11 at ¶ 5].

The Supreme Court has established that "deliberate indifference" in this context is equivalent to a criminal recklessness standard. *See Farmer*, 511 U.S. at 829 (explaining that the official must have been subjectively aware of the risk to the inmate in order to have been deliberately indifferent); *Perez v. Oakland Cty.*, 466 F.3d 416, 423 (6th Cir. 2006) ("Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference."). It is not necessary, however, for the plaintiff to demonstrate that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. Thus, "deliberate indifference" has both an objective and a subjective component. *Perez*, 466 F.3d at 423-24; *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). In other words, "the official must both be aware of acts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Perez*, 466 F.3d at 423-24; *see* also, Comstock *v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (stating that a plaintiff must produce evidence showing "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk").

With regard to the objective component, and thereby what qualifies as a "substantial risk of serious harm," the Sixth Circuit has repeatedly held that only inmates' serious medical needs mandate attention under the Eighth Amendment. *Perez*, 466 F.3d at 423. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person could easily recognize the necessity for a doctor's attention."

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890-897 (6th Cir. 2004); *see Perez*, 466 F.3d at 423-24 ("In cases involving an inmate's medical needs, the need 'must be, objectively, sufficiently serious.'"). (*quoting Farmer*, 511 U.S. at 834).

"An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (*quoting Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). If the plaintiff cannot establish the detrimental effect of delay in treatment, then he fails to satisfy the objective prong under *Perez*. 466 F.3d at 423-24; *see also Doe v. Sullivan Cty.*, 956 F.2d 545, 550 (6th Cir. 1992), *cert. denied,* 506 U.S. 864 (1992) (holding that proximate causation is an essential element of a § 1983 claim for damages).

As to the subjective component, courts should analyze this prong "in light of the prison authorities' current attitudes and conduct." *Smith v. Cty. Of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012); *see Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (finding that the subjective prong requires that an official possessed "a sufficiently culpable state of mind in denying medical care"). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If the inmate received "grossly inadequate care" accompanying "a decision to take an easier but less efficacious course of treatment," however, this may amount to deliberate indifference. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). In order to qualify as "grossly inadequate care," the medical treatment must have been

9

"so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 844 (*quoting Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir, 1989)).

B.  **Application**

Here, based on the record before the Court and relevant case law described herein, the Court finds that Lt. Gallion did not violate Plaintiff's constitutional rights under the Eighth Amendment and therefore is entitled to qualified immunity.

Plaintiff has failed to establish the objective component required for a deliberate indifference claim, as Plaintiff has not provided any evidence to support that the delay in medical treatment- or inadequacy of medical treatment- had a detrimental effect. *See Napier*, 238 F.3d at 742 (determining that a plaintiff fails to satisfy the objective prong of deliberate indifference if he cannot establish the detrimental effect of delay). The declaration of Dr. Mathews [Doc. 27-2] leads this Court to the contrary conclusion. When Plaintiff saw Dr. Mathews, he complained of vision trouble and headaches [Doc. 27-2 at ¶¶ 4-7]. He told Dr. Mathews that he has glasses at home or in his car, but his family could not find them [Doc. 27-2 at ¶ 4]. Dr. Mathews' note for needing glasses was based solely on Plaintiff's subjective complaints and not his own objective findings [Doc. 27-2 at ¶¶ 7,8]. Additionally, when the Court focuses on Plaintiff's communication of his need for glasses to Lt. Gallion, it cannot conclude that this is an injury that a layperson would readily discern as requiring prompt medical attention. Thus, without the required "verifying medical evidence" in the record to establish the detrimental effect of the delay in medical treatment, this Court cannot conclude that that Plaintiff suffered from a serious medical need.

Moreover, Plaintiff has failed to establish the subjective component for a claim of deliberate indifference by failing to show Lt. Gallion possessed a sufficiently culpable state of mind in denying medical care. Dr. Mathews did not order an emergency eye exam nor did he refer Plaintiff to an eye specialist [Doc. 27-2 at ¶¶ 4-6]. Lt. Gallion's responses to Plaintiff's requests and grievances fail to show he acted in a "criminally reckless manner". *See Farmer*, 511 U.S. at 839-4.

Under the first prong of the qualified immunity test, Plaintiff failed to establish his constitutional rights have been violated because he failed to meet either the objective or subjective components of a deliberate indifference claim. Based on this finding the Court does not reach the second prong of the qualified immunity test.

**IV.     Failure to Respond in Opposition to Motion for Summary Judgment**

As an alternative basis for dismissal, the Court notes that it may properly dismiss a case for want of prosecution. *See, e.g.*, *Custom v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986); Fed. R. Civ. P. 41(b). Failure to respond or otherwise oppose a motion operates as both a waiver of opposition to and an independent basis for granting the unopposed motion. *See, e.g.*, *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013); *see also* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.").

More than nine months have passed since Lt. Gallion filed the instant motion for summary judgment on May 12, 2016 [Doc. 27]. Plaintiff has not responded and, by way of the same, is found to have waived opposition to Lt. Gallion's request. *Millworks Construction, LLC v. Environmental, Safety & Health, Inc.*, No. 3:12-CV-177, 2015 WL 11019129, at *1–2 (E.D. Tenn. Mar. 23, 2015). As a result, the motion will be granted.

11

## V. CONCLUSION

For these reasons, Defendant, Lt. Gallion's motion for summary judgment [Doc. 27] will be **GRANTED** and he will be **DISMISSED** from this action.

**SO ORDERED.**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
